# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

Tashawn Thorne,

        Plaintiff,

    v.

United States et al.,

        Defendants.

Case No. 3:21-cv-50348

Honorable Iain D. Johnston

## MEMORANDUM OPINION AND ORDER

Plaintiff Tashawn Thorne, a federal prisoner, brings this action against the United States and several employees of the Bureau of Prisons (BOP) (the Individual Defendants).[1] *See generally* Second Am. Compl. (SAC), Dkt. 133. Before the Court are motions by the Government to dismiss two counts of Thorne's second amended complaint, one Thorne's claim against the United States under the Federal Tort Claims Act (FTCA) (Count I) and the other his claim against the Individual Defendants under *Bivens* (Count II). Dkt. 75, 98. For the following reasons, the motion is granted in part and denied in part.[2]

---

[1] In particular, Thorne names Thomson correctional officers James Dix, Andrew Drinkall, Harley Jacobson, Zachary Sigman, Brandon Boaz, Eric Conklin, Justin Alcala, Chandler Pendley, Quenton Terry, Benjamin Lodge, Kenneth Dugdale, and nurses Apryl Liggett, Anthony Simcox, and Christian Marsh. SAC, Dkt. 133, at 1.

[2] The Court thanks assigned counsel for their work in this action.

## I. BACKGROUND

At all relevant times, Thorne was a prisoner at United States Penitentiary, Thomson in Thomson, Illinois. SAC ¶ 10. According to the Second Amended Complaint, on August 26, 2020, Thorne began to "hear voices and experience suicidal ideations." *Id.* ¶ 45. He told Officers Drinkall, Pendley, Sigman, and Conklin that he "needed to speak with a psychologist" but was refused. *Id.* ¶¶ 46-47. Later, Officer Terry approached him to "inquire into his problems from earlier in the day" and Thorne again asked to see a psychologist. *Id.* ¶¶ 48-49. Officer Terry told Thorne that he could not see a psychologist "at that time" and ordered him to put on handcuffs so his cellmate—previously evacuated—could safely return to their cell. *Id.* ¶¶ 47, 50. Thorne refused Officer Terry's request to put on handcuffs, so Officer Terry left and came back with Officer Lodge. *Id.* ¶¶ 50-51. They asked him to put on handcuffs, he again asked to see a psychologist, but each side refused the other. *Id.* ¶¶ 51-53.

After this third refusal of his request to see a psychologist and "seeing no solution," Thorne swallowed "more than 50 pills of his prescription Lisinopril . . . in an attempt to commit suicide." *Id.* ¶ 54. After letting himself be handcuffed to allow his cellmate to return, Thorne then refused to allow Officer Lodge to remove his handcuffs when he told Thorne that he "needed to go see medical personnel due to swallowing the Lisinopril medication." *Id.* ¶¶ 55-56. Thorne, still in his cell, came to the cell door to meet Officer Lodge; Officer Lodge "radioed the other officers to open the door" and then "held [Thorne's] handcuffed wrists at the door and radioed the

other officers to close the door to his cell." *Id.* ¶¶ 56-57. At this, Thorne, "fearing injury to himself, became frightened and pulled his arms away from Officer Lodge." *Id.* ¶ 58. Thorne was then "bodily escorted" out of the cell by several officers, "stripped naked, put into paper garments, [] placed into full ambulatory restraints" and moved to a restraint cell. *Id.* ¶¶ 59-61.

In the restraint cell, Thorne was examined by Nurse Liggett, given "a charcoal substance to counteract the Lisinopril" and "provided with the opportunity to speak with a psychologist." *Id.* ¶ 64. He remained there—fully restrained—for nearly 48 hours, in pain from the tightly applied restraints. *Id.* ¶¶ 65-66. Throughout this period, various nurses and prison guards entered the restraint cell but all refused Thorne's requests that they loosen his restraints and get him medical attention. *Id.* ¶¶ 66-67.[3] Instead, the guards "continually tighten[d] the ambulatory restraints," making it difficult for Thorne to breathe and impossible for him to sit normally or walk to the bathroom. *Id.* ¶¶ 69. In addition, throughout his time in the restraint cell, they used their shields, fists, feet, and night sticks to "physically abuse" Thorne, even as he was "completely defenseless and not in any way a danger to himself or others."[4] *Id.* ¶¶ 69, 71. Although other guards were

---

[3] In particular, Thorne names nurses Liggett, Simcox, and Marsh and officers Alcala, Conklin, Drinkall, Pendley, and Lodge.

[4] In particular, Thorne alleges that Officer Sigman "tighten[ed] Plaintiff's waist restraint until Plaintiff was unable to breathe comfortably and forced to urinate on himself"; that Officer Jacobson "slam[ed] his shield into Plaintiff's face, knocking out Plaintiff's front tooth"; that Officer Terry "tighten[ed] the ambulatory restraints until Plaintiff had difficulty breathing and lost feeling in his extremities" and "supplied Lieutenant Dix with a night stick used to beat Plaintiff"; that Lieutenant Dix "kick[ed] and stomp[ed] on Plaintiff's hands, spit[] on Plaintiff" and ordered other officers to "repeatedly slam[] their shield[s] on Plaintiff's hands and wrists"; that Officer Boaz "chok[ed] Plaintiff," tightened his restraints

3

present while this occurred, and observed it, none made any effort to stop it. *See id.* ¶¶ 66-67. Finally, on the morning of August 28, Thorne was released from the restraints. *Id.* ¶¶ 91.

Thorne first sued over these events on January 8, 2021, bringing *Bivens* claims against the Individual Defendants. No. 20 CV 50487, Dkt. 5. He brought this suit against the United States under the FTCA on September 7, 2021. Dkt. 1. His complaint in this suit was amended to incorporate *Bivens* claims against the Individual Defendants on October 25, 2021, Dkt. 70, and the first suit was voluntarily dismissed on October 31, 2021. No. 20 CV 50487 Dkt. 194.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b) challenges the sufficiency of the plaintiff's complaint. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014). Under Rule 8, a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a complaint to be plausible, the plaintiff's factual allegations—as opposed to any legal conclusions—must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true all of the

---

to the point that he "had difficulty breathing and lost feeling in his extremities, and beat[] Plaintiff's hands and wrists with a shield; that Officer Horton "tightened Plaintiff's full ambulatory restraints to the point he had difficulty breathing and lost feeling in his extremities, as well as beating Plaintiff"; and that Officer Lodge "ordered other USP Thomson officers to tighten Plaintiff's full ambulatory restraints to the point he had difficulty breathing and lost feeling in his extremities." SAC ¶¶ 73-79.

plaintiff's well-pleaded factual allegations and views them—and all reasonable inferences—in the light most favorable to the plaintiff. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019). The moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## III. ANALYSIS

### A. Count I – FTCA

In Count I, Thorne brings a claim against the United States under the FTCA. He alleges that several of the Individual Defendants named in Count II "participated in the use of excessive force" or "observed other officers using excessive force, and failed to intervene to prevent" the use of such force, thus giving rise to liability on the part of the United States. SAC ¶ 80.

In its motion to dismiss Count I, the Government first argues that Thorne has failed to bring a claim within the ambit of the FTCA's waiver of sovereign immunity. U.S. Mem. Supp. Mot. Dismiss at 6, Dkt. 76. In the heading of Count I, Thorne describes his claim as being for "Excessive Force/Failure to Intervene to Prevent Excessive Force," SAC at 15, Dkt. 133—language seemingly drawn from the *Bivens* line of cases.

But any viable FTCA claim must have its source in the "law of the place" where the tort allegedly occurred, which refers only to the law of the State. *FDIC v. Meyer*, 510 U.S. 471, 478 (1994). So, the Government argues, because this

5

formulation of Count I suggests that it sounds in federal law (or, at best, alleges only the illusory state-law tort of "excessive force"), it must be dismissed. U.S. Mem. Supp. Mot. Dismiss at 6, Dkt. 76; U.S. Reply Supp. Mot. Dismiss at 2-4, Dkt. 94. In response, Thorne attempts to clarify that Count I is based on "Illinois state law claims of assault and battery" and a "failure to intervene to prevent excessive force result[ing] in [a]ssault and [b]attery." Thorne Resp. Opp'n Mot. Dismiss at 5, Dkt. 91. Because Thorne has made out plausible cases for relief under state-law causes of action, the Government's motion to dismiss Count I is denied.

A complaint may identify an incorrect legal theory and still survive a motion to dismiss, *see Jajeh v. County of Cook*, 678 F.3d 560, 567 (7th Cir. 2012); *Rabe v. United Airlines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011), and incorrect headings are not fatal to a complaint, *Ericson v. Conagra Foods, Inc.*, 559 F. Supp. 3d 705, 722 (N.D. Ill. 2021).

Despite the out-of-place *Bivens* language in the heading of Count I, its substance is not that of a *Bivens* claim, but rather—as Thorne seems to argue, Thorne Resp. Opp'n Mot. Dismiss at 5—two claims based on two different state-law theories of liability: (1) assault and battery and (2) negligence. And accepting all of the complaint's well-pleaded facts as true, as the Court is obligated to do at this stage, Thorne has made out plausible claims for relief as to assault, battery and negligence under Illinois law, and has administratively exhausted those claims.

### 1. FTCA

The FTCA extends a limited waiver of the sovereign immunity of the United States with respect to certain torts committed by federal employees. *See FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994). Claims that qualify for such a waiver under the FTCA must be: (1) against the United States; (2) for money damages; (3) for injury or loss of property, or personal injury or death; (4) caused by the negligent or wrongful act or omission of any employee of the federal government; (5) while acting within the scope of his or her employment; (6) under circumstances where the United States, if a private person, would be liable to the claimant under the law of the place where the act or omission occurred. *Meyer*, 510 U.S. at 477 (citing 28 U.S.C. § 1346(b)).

A claim "arising out of assault [or] battery" generally may not proceed under the FTCA unless it is committed by an "investigative or law enforcement officer" of the United States. 28 U.S.C. § 2680(h). Because there is no argument that Thorne's claims are barred by this provision (indeed, the Government concedes that it does not apply, U.S. Mem. Supp. Mot. Dismiss at 9), the Court will assume that it is no object to the maintenance of Count I.

### 2. Torts alleged

#### *i. Illinois tort law*

Under Illinois law—the "law of the place" of the tort for purposes of Thorne's FTCA claim—a civil battery is the "unauthorized touching of another's person."

7

*Boyd v. City of Chicago*, 378 Ill. App. 3d 57, 69, 880 N.E.2d 1033, 1043 (2007). A battery must include an "intentional act on the part of the defendant and a resulting offensive contact with the plaintiff's person." *McNeil v. Carter*, 318 Ill. App. 3d 939, 944, 742 N.E.2d 1277, 1281 (2001). The defendant must act with the intent to cause a harmful or offensive contact. *Happel v. Wal–Mart Stores, Inc.*, 316 Ill. App. 3d 621, 630, 737 N.E.2d 650, 657 (2000), *aff'd*, 199 Ill. 2d 179, 766 N.E.2d 1118 (2002).

Assault is defined under Illinois law as an "intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such circumstances as to create a well-founded fear of imminent peril, coupled with the present ability to effectuate the attempt if not prevented." *Parrish by Bowker v. Donahue*, 110 Ill. App. 3d 1081, 1083, 443 N.E.2d 786, 788 (1982). "A claim for assault must include an allegation of a reasonable apprehension of an imminent battery." *Benitez v. Am. Standard Cirs., Inc.*, 678 F. Supp. 2d 745, 767 (N.D. Ill. 2010).

An Illinois negligence action requires that the plaintiff allege "that the defendant owed a duty, that the defendant breached that duty, and that defendant's breach was the proximate cause of injury to the plaintiff." *Bell v. Hutsell*, 955 N.E.2d 1099, 1104 (Ill. 2011).

### ii. Source of duty of care

In *United States v. Muniz*, the Supreme Court held that the FTCA allows for tort suits against the United States for personal injuries sustained during confinement by an inmate in a federal prison by reason of the negligence of

government employees. 374 U.S. 150, 150 (1963). The Seventh Circuit has recognized that in the context of the FTCA, "[18 U.S.C.] § 4042 describes a duty of care for persons in federal custody. . . . That duty includes the 'safekeeping' and 'protection' of all such persons. Applicable state tort law . . . governs whether the duty was breached and whether the breach was the proximate cause of the plaintiff's injuries." *Parrott v. United States*, 536 F.3d 629, 637 (7th Cir. 2008).

### iii. Thorne's complaint

### a. Assault and battery

As to assault and battery, Thorne's complaint alleges that his restraints were tightened to such a degree that he had difficulty breathing and was made to feel "extreme discomfort"; that several of the Individual Defendants "use[d] their shields, fists, feet, and/or night sticks to cause injury to the Plaintiff's face and body"; and that all of this was done while he was "completely defenseless and not in any way a danger to himself or others." SAC ¶¶ 69, 71. Although not explicitly alleged, these facts give rise to the reasonable inference that Thorne was able to apprehend the imminent use of allegedly unlawful force throughout the ordeal.

### b. Negligence

As to negligence, he further alleges that for nearly two full days, the Individual Defendants refused to take "any action to relieve the pain caused by the tightly applied restraints" and "failed to intervene" to prevent other uses of "excessive force" they knew were occurring; that he was owed a duty of care by the

BOP under 18 U.S.C. § 4042 for his safekeeping and protection as an inmate; and that what injuries he suffered were caused by BOP's failure to uphold that duty through its employees. SAC ¶¶ 66, 80, 98-102.

### iv. Conclusion

Thorne has thus plausibly pleaded tort claims for assault, battery and negligence under Illinois law sufficient to proceed under the FTCA against the United States.

### 2. Administrative Exhaustion

The Government raises another potential obstacle to Count I: a failure of administrative exhaustion. While conceding that Thorne's first-submitted SF-95 exhausted claims of assault and battery, the Government argues that any additional claims of failure to intervene or protect—those the Court has construed as a state-law claim of negligence—were not exhausted. U.S. Mem. Supp. Mot. Dismiss at 9.

### i. Motion under 12(b)(1) vs. 12(b)(6)

Some courts have described the FTCA's statutory requirements (including the requirement of administrative exhaustion) as conditions precedent to suit, and others have described them as necessary components to subject-matter jurisdiction. In *Palay v. United States*, the Seventh Circuit declined to settle the question of whether the FTCA's requirements are jurisdictional. 349 F.3d 418, 424 (7th Cir. 2003). If they are jurisdictional, then dismissal is proper under Federal Rule of Civil

Procedure 12(b)(1). *Id.* If the requirements are "statutory prerequisites to suit", then dismissal is proper under Rule 12(b)(6). *Id.*

A failure of administrative exhaustion produces the same result regardless of whether it is jurisdictional or merely a condition precedent: the claim cannot proceed. Because the United States has filed the motion to dismiss under both 12(b)(1) and 12(b)(6), this Court is not required to resolve the question. *Id.* (noting that the only reason to resolve this debate is if a federal court dismissed the claim only for lack of subject-matter jurisdiction).

### ii. Considering matters outside the pleadings

As a preliminary matter, the Court is entitled to take judicial notice of matters in the public record, including Thorne's administrative claims, in resolving a motion to dismiss. *See Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003) (finding that a Standard Form 95 (SF-95) is such a record); *Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008) ("We may take judicial notice of documents in the public record . . . without converting a motion to dismiss into a motion for summary judgment").

### iii. FTCA's statutory requirements for suit

Under the FTCA, an "action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). A federal agency is presented

11

with a claim when it receives "an executed Standard Form 95 or other written notification of an incident." 28 C.F.R. § 14.2(a). "[A] proper administrative claim under the FTCA contains four elements: (1) notification of the incident; (2) a demand for money damages in a sum certain; (3) the title or legal capacity of the person signing; and (4) evidence of the person's authority to represent the claimant." *Smoke Shop, LLC v. United States*, 761 F.3d 779, 786 (7th Cir. 2014) (quoting 28 C.F.R. § 14.2(a)). "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2675(a).

### iv. Construing pro se administrative submissions

"At each stage of the federal tort claim process, pro se administrative complaint forms are entitled to a generous construction." *Buechel v. United States*, 746 F.3d 753, 760 (7th Cir. 2014) (cleaned up). "If the claim would have been apparent to a legally sophisticated reader of the form, then [the court] will charge the agency with notice of that claim and deem it to have been exhausted." *Palay v. United States*, 349 F.3d 418, 425-26 (7th Cir. 2003) (cleaned up). Although a claimant is required to plead sufficient facts to put the agency on notice of the claim to allow it to investigate, pleading a legal theory is not required. *Id.* Any claim "fairly implicit in the facts" should be deemed to have been presented to the agency. *See Murrey v. United States*, 73 F.3d 1448, 1452 (7th Cir. 1996).

12

*v. Thorne's administrative submissions*

In this case, it is undisputed both that Thorne's SF-95 of January 2021 was filed pro se and that it was exhausted by BOP's failure to respond to it within the statutorily required six-month window, entitling Thorne to treat it as a final denial of his claims.[5] *See* U.S. Reply Supp. Mot. Dismiss at 3. Thus, whatever claims were contained within this SF-95 are administratively exhausted for purposes of the FTCA.

It reads in its entirety:

> On 8.26.20 and continuing through 8.27.20 I was placed in full restraints and beaten by staff during every 2 hour restraint check. Also the restraints were placed on so tight that they caused injuries.

U.S. Mem. Supp. Mot. Dismiss Ex. 1 at 5.

The Court need not resolve any question as to the import of Thorne's other administrative submissions, because, although a close question, Thorne's SF-95 of January 2021 exhausted his claim of negligence as well as assault and battery.[6]

Thorne's SF-95 reports that over a two-day period, he was "beaten by staff during every 2 hour restraint check." Despite the lack of detail, a legally sophisticated reader, cognizant of a general duty of care owed to inmates, would

---

[5] BOP did not issue an official written denial until December 7, 2021. U.S. Mem. Supp. Mot. Dismiss Ex. 1 at 8.

[6] Possibly germane to his FTCA claim, Thorne also made submissions to OPM, U.S. Mem. Supp. Mot. Dismiss Ex. 2, allegedly attached other materials to the initial SF-95, *see* U.S. Mem. Supp. Mot. Dismiss at 5, and submitted an additional SF-95 to BOP in late 2022, U.S. Mem. Supp. Mot. Dismiss Ex. 1 at 22.

have realized that there had plausibly been a breach of that duty, and that Thorne had claimed such a breach. This is so because Thorne's SF-95 claims a long duration of abuse (construed generously, it suggests that it started on one day, continued "through" another, and was renewed at "every" 2 hour interval) and because it says he was beaten by "staff" (again, construed generously, this suggests that his plight was known or caused by more than one employee of the BOP). Liberally construed, Thorne's SF-95 suggests that he was asserting a claim related to some severe breakdown in the proper operation of the prison that led to his injuries, sufficient at least to suggest negligence to a legally sophisticated reader. Therefore, Thorne's claim of negligence was presented to the agency by way of his original SF-95 and subsequently administratively exhausted by BOP's failure to respond within 6 months.

### 3. Forfeiture

Finally, the Government argues that Thorne forfeited his failure to protect claim by failing to defend it in his reply. U.S. Reply Supp. Mot. Dismiss at 7. But the Court has construed all references to failure to protect or failure to intervene as referring to the same claim of negligence under state law, so there was no forfeiture.

*    *    *

The Government's motion to dismiss is denied with respect to Count I.

14

## B. Count II – *Bivens*

In Count II, Thorne brings a *Bivens* claim against the Individual Defendants, alleging that they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The Government argues that this claim is not cognizable under *Bivens*, and that even if it were, it was not administratively exhausted and is not timely under the relevant statute of limitations. Individual Defendants' Mem. Supp. Mot. Dismiss at 1, Dkt. 101.

Count II alleges that the Individual Defendants "fail[ed] to keep [Thorne] safe from [the] physical and emotional assault inflicted on him by USP Thomson prison guards"; "failed to take any action to protect Plaintiff after the specific, immediate threat of assault to Plaintiff was known, or should have been known, by the BOP"; and "fail[ed] to allow him to see a psychologist when he was known to be clinically depressed, explained he was having suicidal ideations, and requested to speak with a psychologist immediately." SAC ¶¶ 111-113. He argues that the facts of this case are analogous to those of *Carlson v. Green*, one of the cases that recognized a *Bivens* claim, both because of the Individual Defendants' "failure to allow him to see a psychiatrist" and their "fail[ure] to respond to his continued pleas for medical assistance while they restrained and beat him for days." Thorne Resp. Opp. Mot. Dismiss at 8, Dkt. 109.

15

Thorne thus presents two different theories of liability: one for not obtaining psychiatric help for his suicidal ideations,[7] and one for not obtaining medical help as he was beaten thereafter. Under either theory, however, Count II must be dismissed. The first theory must be rejected because it was not administratively exhausted. And both the first and second theories are barred by the statute of limitations.[8]

### 1. PLRA

The Prison Litigation Reform Act of 1996 (PLRA) contains a comprehensive administrative exhaustion requirement. Under that statute, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement applies to "all actions brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Id.*; *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002) (finding that a *Bivens* plaintiffs must

---

[7] Thorne acknowledges that he did receive medical assistance after his suicide attempt. SAC ¶ 64

[8] Both the failure to exhaust administrative remedies and the statute of limitations are affirmative defenses. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007) (failure to exhaust administrative remedies is an affirmative defense); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 & n.1 (7th Cir. 2012). And affirmative defenses are best raised in an answer and then either a motion for judgment on the pleadings under Rule 12(c) or a motion for summary judgment under Rule 56. *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 731 F.Supp.2d 850, 851 n.1 (E.D. Wis. 2010) *aff'd* 642 F.3d 560 (7th Cir. 2011). But, in rare cases when the defenses are facially apparent and unmistakable, courts can proceed under Rule 12(b)(6). *See Boyce v. Ill. Dep't of Corr.*, 551 Fed. Appx. 441, 443 (7th Cir. 2016); *Turley v. Gaetz*, 625 F.3d 1005, 1013 (7th Cir. 2010); *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). Nevertheless, the Court counsels the Government not to raise these affirmative defenses using this procedure, even if the plaintiff does not raise this procedural issue in response, as in this case. *Brownmark Films*, 682 F.3d at 690 n.1; *Sawyer*, 731 F.Supp.2d at 851 n.1.

exhaust administrative remedies before bringing suit alleging some violation of the Eighth Amendment).

To exhaust a claim, a prisoner must "reasonably alert[]" the prison that the prisoner is seeking redress for a particular wrong allegedly done to him. *Bouman v. Robinson*, 324 F.App'x 523, 527 (7th Cir. 2009); *see also Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) (finding that in the context of § 1983, exhaustion is satisfied if the grievance "served its function of alerting the state and inviting corrective action"). The exhaustion requirement is an affirmative defense, which the defendant bears the burden of proving. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The Seventh Circuit enforces a "strict compliance approach" to the exhaustion requirement; a failure to strictly comply in every respect with prescribed procedures requires dismissal. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.").

### 2. Theory 1 fails because of a failure of administrative exhaustion

As with his FTCA claim, the facts surrounding Thorne's administrative submissions are murky.[9] Regardless of whether Thorne has strictly complied with the BOP's procedural requirements for administrative grievances, [10] however, this

---

[9] *See* No. 20 CV 50487, Dkt. 164, 177, 179.

[10] The Bureau of Prisons has an established administrative remedy process whereby federal inmates can seek formal review of any complaint regarding any aspect of their imprisonment. *See* 28 C.F.R. §§ 542.10-542.19. This requires, before resorting to a BP-11:

theory of Count II still must fail because it does not put the agency on notice as to his claim.

His BP-11 reads in pertinent part:

> On 8.26.20 and continuing through 8.27.20 to 8.28.20 I was placed in full restraints and beaten by staff during every restrain [sic] check. Staff knocked out my front tooth and applied restraints so tight to my wrist and waste [sic] that my waist and wrist were badly damaged. To resolve my grievance I would like to be transferred immediately to a safe facility, medical care, and the staff members responsible to be held responsible and punished. I am being denied proper forms so I drafted this BP-11.

Individual Defendants' Mem. Supp. Mot. Dismiss Exhibit A at 2.

Thorne relies only on his BP-11 to substantively argue for exhaustion.[11] Thorne Resp. Opp. Mot. Dismiss at 12-13. Strain as one might to construe this generously, there is simply no argument that this submission reasonably alerted the BOP to Thorne's claims regarding the response to his mental health episode. Nor does it make any reference to Thorne's claims in his complaint, *see* SAC ¶¶ 28-42, that he was improperly housed in the SMU, denied proper medication, or

---

(1) an attempt at informal resolution with staff via a BP-8 form, 28 C.F.R. § 542.13(a); (2) failing that, a formal complaint to the warden via a BP-9 form within 20 days of the event that triggered the initial complaint, to which the warden has 20 days to respond; 28 C.F.R. §§ 542.13-542.14, 542.18; (3) failing that, an appeal to the appropriate regional director via the BP-10 form within 20 days of the date of warden's decision, to which the regional director has 30 days to respond, 28 C.F.R. §§ 542.15(a), 542.18. Only then may a prisoner file a national appeal via a BP-11 with the Office of General Counsel within 30 days of the regional director's response, to which the General Counsel has 40 days to respond. 28 C.F.R. §§ 542.15(a), 542.18.

[11] Thorne cites his BP-11 but includes the text of his SF-95; the analysis is unaffected, as the substance of the SF-95 does not plausibly exhaust this claim either.

anything pertaining to the treatment of his mental health issues, either before or after he was taken to the restraint cell.

To be sure, Thorne's requested relief does state that he now seeks "medical care," but the only reasonable interpretation of that request is as it relates to the consequences of the alleged assault. It is not reasonable to interpret those two words in this context to convey a complaint about his alleged unconstitutional medical care at the time of the complaint. And this conclusion would not change even if it were assumed that all of Thorne's purported submissions were done in strict compliance with the BOP grievance process—a failure of which would necessitate dismissal, regardless of the substance of the complaints.[12] The PLRA's exhaustion requirement is intended to "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525 (2002). Thorne's administrative submissions manifestly fail to do so, and thus any claim premised on this theory must be dismissed.

### 3. Statute of limitations

Finally, Thorne's claim in Count II—regardless of the theory—is also barred by the statute of limitations. *Bivens* claims have the same statute of limitations as § 1983 claims: both periods are borrowed from the state in which the alleged injury occurred. *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 913 (7th Cir.

---

[12] *See* No. 20 CV 50487 Dkt. 164 at 4-5 (BP-10), 6 (BP-9), 6-7 (second BP-10), and 7 (BP-11).

2000); *Cesal v. Moats*, 851 F.3d 714, 721-22 (7th Cir. 2017). In this case, Thorne's injury occurred in Illinois, which has a two-year statute of limitations. 735 ILCS 5/13–202. His first action was dismissed without prejudice. But "'[w]ithout prejudice' does not mean 'without consequence'. If the case is dismissed and filed anew, the fresh suit must satisfy the statute of limitations." *Powell v. Starwalt*, 866 F.2d 964, 966 (7th Cir. 1989).

Thorne's only response to the statute of limitations argument is that the Individual Defendants and/or the Government are being disingenuous in making the argument. Dkt. 109, at 13. Thorne does not argue tolling, continuing violation, or relation back, so those arguments are waived—to the extent they had any merit. *Winsett v. Washington*, 130 F.3d 269, 273 (7th Cir. 1997) (arguments not raised are waived). His original lawsuit on this *Bivens* claim was filed on January 8, 2021, No. 20 CV 50487, Dkt. 5, before the 40 days allowed for the BOP General Counsel to respond to his BP-11 (dated December 14, 2020, Individual Defendants' Mem. Supp. Mot. Dismiss Exhibit A at 2) had elapsed, 28 C.F.R. § 542.18—thus, facially, that suit failed to strictly comply with the procedures for administrative exhaustion.

That action, therefore, regardless of its merits, would have had to have been dismissed as premature. And that action had to be dismissed without prejudice. But the complaint in this case was not amended until October 25, 2022, to allege a *Bivens* claim, First Am. Compl. at 17, Dkt. 70—outside of the relevant statute of limitations. Thorne cites no reason that he was unable to amend or refile his claim

within the statute of limitations. Regardless of whether his claim had become administratively exhausted, it is not timely and thus barred.

*    *    *

The Government's motion to dismiss is granted with respect to Count II.

## IV. Conclusion

For the reasons stated above, the Court grants the Government's Motion to Dismiss with prejudice with respect to Count II but denies it with respect to Count I.

Date: September 26, 2023

                                                            Honorable Iain D. Johnston
                                                            United States District Judge